## In re NORMAN.

(District Court, D. Montana. March 18, 1919.)

### No. 140.

JUDGMENT ⚖828(1)—RES JUDICATA—DENIAL OF NATURALIZATION.

A state court's denial of leave to file a naturalization petition is res judicata, so as to be binding upon a federal court; and if the government continues to oppose the alien's application, his only remedy is to renew the application five years after the occurrence for which the state court denied it.

Motion by George Norman for leave to file a naturalization petition. Denied.

R. E. Hammond, of Havre, Mont., for petitioner.
E. C. Day, U. S. Atty., of Helena, Mont., for the United States.

BOURQUIN, District Judge. Upon notice to the United States attorney, who opposes, Norman moves for leave to file petition for naturalization.

The moving papers, alone before the court, allege that in December, 1918, a state court denied Norman's like petition by order that, "it appearing that petitioner, a single man, without dependents, and a government homesteader, claimed exemption from military service, denied with prejudice"; that the undisputed evidence before said court was that Norman engaged in farming upon leased land, and in accordance with governmental instructions he did claim and receive deferred classification in the draft; that the state court found no objection to Norman's moral character, but denied him admission to citizenship because of said deferred classification alone; that said court denied his application for rehearing, and informed him that his subsequent petition would be denied; that he at no time was a government homesteader. It does not appear whether or not the United States participated in said hearing, nor whether or not formal decree has been entered. If the situation is as Norman alleges, and if he can satisfy the United States thereof, it would seem that in good conscience the United States ought to consent to reapplication for citizenship by him. For the proceedings before the draft board unimpeached, its order of deferred classification is a conclusive adjudication that therein Norman could best serve the United States at war, and that to seek deferred classification was not only his right, but was also his duty. And the judgment of the board was entitled to the like respect in said state court, that the latter's judgment is here.

It is to be noted that, to the end that every person would be employed where most useful to the United States, and not at all to create privileges for a favored few, the Selective Draft Law (Act May 18, 1917, c. 15, 40 Stat. 76 [Comp. St. 1918, §§ 2019a, 2019b, 2044a–2044k]) provided for exemptions, some absolute, some conditional upon the judgment of the boards, some partial by way of deferred classi-

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fication and also conditional upon the board's judgment. Judges are of the absolute exemptions. In view thereof, and of Norman's allegations herein, that the judge of the state court determined that partial exemption stamped Norman as unfit for admission to the same citizenship as the judge enjoys, is incomprehensible, unless imputed to that fierce, fiery, and intolerant emotionalism that in religion takes the form of the Inquisition, St. Bartholomew's, and Smithfield, and in citizenship too often finds expression only in anathema upon those who fail to measure up to individual standards of patriotism to which their sponsors do not conform.

Be the truth what it may, however, be the injustice to Norman what it may, settled principles preclude this court from inquiring therein. This his collateral attack upon said court's judgment must fail. To that, the judgment is impregnable; and it is res judicata so long as the United States insists upon the benefit of that judgment against a man whose only offense (if he tells the truth here, and which is uncontradicted) is that he served the United States where best he could and where it said he should. For though naturalization proceedings are wholly statutory, final orders therein are so far of the nature of judgments that they ought to be and must be held subject to the law of judgments. Therefore, since it follows that Norman's allegations cannot be considered herein to impeach the state court's order aforesaid, it must be here inferred that, as found by the state court, Norman "claimed exemption from military service" and under circumstances in evidence before it warranting the state court to find, and that it did find, he had not the "good moral character" and the disposition to the "good order and happiness" of the United States, necessary to qualify him for admission to citizenship. Although the naturalization law (Act June 29, 1906, c. 3592, 34 Stat. 596) does not expressly forbid, and even contemplates, repeated petitions for citizenship after petitions denied, such repeated petitions can be only in accordance with the general law of procedure, judgments, and res judicata; that is, when changed conditions justify, when (as the naturalization law virtually stipulates) "the cause for such denial has since been cured or removed."

If Norman has been injured by abuse of judicial discretion and by exercise of mere arbitrary power, the present attitude of the United States maintained, his only remedy is to maintain a good moral character, etc., for five years subsequent to the claim of exemption found by the state court, and so cure or remove the cause of the state court's denial as aforesaid. Whereupon he may petition anew for citizenship. See Guliano's Case (D. C.) 156 Fed. 420, and Centi's Case (D. C.) 217 Fed. 834.

The motion must be, and is, denied.